UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-80155-CR-MARRA/HOPKINS(s)(s)(s)

UNITED STATES OF AMERICA

                              Plaintiff,

v.

TIMOTHY SIGMAN,

                              Defendant.

_____/

FILED by ____ ____ D.C.

OCT 2 1 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO EXCLUDE
EVIDENCE (DEs 975, 1003) AND TO DISMISS THE INDICTMENT (DE 1159)

**THIS CAUSE** comes before the Court upon an order of referral (DE 494). The Court has before it Defendant's motions to exclude evidence (DEs 975, 1003) and to dismiss the Indictment (DE 1159). The Government responded (DEs 988, 994, 1026, 1168). An evidentiary hearing was held on October 4, 2013 (DE 1180).

Factual background

Defendant Sigman filed motions seeking to prohibit the government from introducing evidence derived from documents within a notebook provided by defendant in response to a grand jury subpoena served on or around July 6, 2011. The attorney for the defendant who produced the responsive documents, David Roth, was the only witness at the hearing. The evidence showed that the documents at issue were delivered to the government by attorney David Roth on or around July 29, 2011. The United States intends to use 3 pages of the documents at issue (GX 1, DE 988-4) during the presentation of the government's case.

Prior to attorney Roth's entry into the matter in July, 2011, the Defendant was represented by attorneys Anne Bittinger and Michael K. Spotts in relation to the investigation.

The grand jury subpoenas had sought documents and records related to Health Transformations LLC, including correspondence with employees and contractors. The items sought through the subpoenas were returnable to the grand jury on July 19, 2011. On or around July 15, 2011, defendant's new attorney, David Roth, requested an extension of time to provide the records to the government. A ten day extension of time to respond was granted and on July 29, 2011, attorney Roth delivered approximately 12 boxes of materials to DEA Special Agent Robert Cassitta. Attorney Roth advised Agent Cassita that the defendant wanted the government to have everything, including a laptop that attorney Roth had not reviewed. (DE1180 pgs 94-97). Attorney Roth testified that he did a cursory review of some of the binders in the 12 boxes. He did not do any privilege review, notwithstanding that 2 attorneys had been working on the matter immediately before attorney Roth was retained. Attorney Roth did not have any direct discussions with his client about privileged materials. No privilege log was prepared, and no inventory of the production was apparently made. The defendant did not advise his attorney that any privileged materials were in the production. The documents were not bate-stamped.

The grand jury subpoena returns contained, amongst the materials sought, an unmarked notebook of copied printed materials, some of which bore handwritten notes. There were no markings on the outside of the notebook. This notebook has various documents, including results of internet searches about laws, prescribing practices, medical association ethics matters and an eight page document at the top of which are the words "PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATION." This eight page document is a memo, dated April 18, 2011, stating the author was Anne Bittinger Esq, was directed to Dr.

Timothy Sigman and related to prescribing laws.  The table of contents preceding the memo

described 10 sections of documents within the notebook, including the eight page memo with no

indication as to the identity of the preparer of the table of contents.  Beyond the memo were an

additional 483 pages of items.  Many of the documents, including the typewritten memo, bore

handwritten notes, many of which were derogatory remarks with expletives about the Drug

Enforcement Administration, government in general, and the lack of understanding regarding the

practice of medicine by government officials and other entities.  Some of these additional

documents contained dates of printing at the bottom of the pages, all of which were after April

18, 2011, and included dates of 6/24, 6/28, 7/1, 7/14, all during 2011, and other dates within that

time, all during which the investigation at issue was known to members of the charged

conspiracies, including defendant Sigman.

On August 2, 2011, Cassitta sent AUSA Cohen an e-mail which stated the following:

> "This is only two pages from a binder turned over by Sigman.  Included in the binder, not in this email is an [sic] legal opinion by Anne Bittinger, attorney who Sigman put me in touch with when I first went to interview him.  She is a health care attorney.  Anyway, there is a lot more scribbled notes that make interesting reading and are a good indicator where Sigman is headed."

Thereafter, on August 2, 2011, AUSA Cohen asked the agent if this was a legal opinion

created for Sigman, to which he responded:

> "Yes for him. He turned it over along with other legal stuff you need to see. I will bring the binder tmw [sic] so you can peruse. I finished pulling 10 sigman customers and made cooies [sic] to send to green tomorrow. I'm going home now."

The next morning Cassitta sent an additional document from the binder entitled "AMA Principle

of Medical Ethics."  AUSA Cohen responded to this additional document by stating:

"We need to talk about this and discuss our approach to Mr. Roth as to these documents. My impression is that these documents may have been "created" to put into the response thinking this would in some way help his position."

Later on August 2, 2011, AUSA Cohen sent Mr. Roth the three pages (GX 1, DE 988-4) provided by Cassitta with the following statement to Roth: "Attached are two documents your client included in his response to the grand jury subpoena. I want to draw your attention to these matters as we have some concerns about his notations. I thought your review of these documents would be appropriate." The two document (3 pages long) were titled "Physician Patient relationship Law & Legal Definition" and "AMA Principle of Medical Ethics."

Mr. Roth and AUSA Cohen discussed the matter briefly after Roth received the above stated e-mail with the attached documents. This discussion occurred by August 5, 2011. No request was made by counsel for return of any documents. Attorney Roth kept no notes about any relevant conversations with the defendant or the government. (DE 1180, pgs 57-62). Attorney Roth believes that at the time he did not consider the 3 pages to be privileged material. He did not discuss with his client the source of the 3 pages of materials or the purpose of the notes.

Within an e-mail authored by AUSA Cohen on August, 5, 2011, there was a notation directed to Cassitta stating the following: "He [Sigman] is very sorry and did not mean to offend us. The writings were shortly after your visit, blah, blah, blah. I looked more closely at the notebook yesterday evening and some of the stuff was printed 6/24, 6/28, 7/1, 7/14, all during 2011, and other dates within that time."

On August 10, 2011, Cassitta appeared as a witness before the grand jury. Cassitta testified about the notations as well as the fact that documents related to the applicable law was provided by Sigman within the various documents in the notebook.

On August 17, 2011, testimony about the notebook was presented to the grand jury and an indictment was returned. (DE 3). Thereafter, on August 31, 2011, a superseding indictment was sought from and returned by the same grand jury (DE 17).

On December 5, 2011, counsel for Sigman travelled to the DEA offices in Westin for the purpose of reviewing documents and items in the custody of DEA related to this matter as part of the discovery process. Prior to the meeting counsel provided a list of items they specifically wanted available for review. The list provided by counsel for Sigman did not include any of the items delivered to Special Agent Cassitta on July 29, 2011. No request was made during that discovery meeting for any of the Sigman documents in the notebook at issue.

On June 7, 2012, the government presented testimony to Federal Grand Jury 11-02, and sought a superseding indictment. The grand jury hearing the testimony had not previously heard testimony on this matter. No transcripts from previous testimony before the other grand jury were presented to grand jury 11-02 for their consideration. No testimony about the notebook was presented to this new grand jury as part of their deliberative process.

On September 27, 2012, Mr. Roth sent the following e-mail to AUSA Cohen:

> "We would very much appreciate a copy of the documents that Dr. Sigman advises us were inadvertently included in the medical records we turned over. It is our understanding that these consist, among other documents, of articles regarding the use of testerone and HGH."

On that same day AUSA Cohen responded to the e-mail and stated: "

> "In our view, nothing was inadvertently included in the documents Mr. Sigman provided to the government in response to the grand jury subpoena through your offices. My understanding is that those files were scanned by IKON and made available to you through purchase of the discs from IKON. You will note them on the last inventory of items of evidence in the custody of the government disseminated to you on 5/16/2012 by e-mail. These are unnumbered items are reflected as "11

> BOXES OF GRAND JURY MATERIAL" at line 586 of the spread sheet provided. Additionally, my recollection was that you needed additional time to provide the records pursuant to the grand jury subpoena because you were copying what was being turned over.
>
> Please let me know if that assists you in finding the items about which you have inquired"

Thereafter there were no further inquiries regarding the documents contained within the unmarked notebook. Counsel did not demand return of the notebook, nor did counsel indicate that there was material within the notebook that he and his client perceived to be protected by attorney-client privilege.

On March 25, 2013, having discovered that the documents with the unmarked notebook at issue were not scanned as part of the IKON production made available as discovery for defendants, AUSA Cohen sent a CDROM containing scanned documents found within the unmarked notebook to counsel for Sigman and the remaining two defendants scheduled to appear at the trial then scheduled to begin April 1, 2013. With that CDROM was a letter indicating the content of the disc and the fact that the government may utilize some of the materials at trial. Additionally, the government filed a trial memorandum (see DE 964), which was served on counsel, indicating the government's intention to utilize some of the materials within the notebook which contained handwriting a witness had recognized to be Sigman's.

On March 27, 2013, attorney Roth indicated there was an issue arising from the government's possession of the materials in the unmarked binder. The motion to exclude at issue here was filed on April 2, 2013 (DE 988).

Analysis

Defendant's motions are now controlled by Fed.R.Evid. 502(b), enacted and effective September 19, 2008. It resolves some longstanding disputes in the courts about inadvertent disclosure issues and seeks to provide a predictable, uniform set of standards under which parties can determine the consequences of a disclosure of a communication or information covered by the attorney-client privilege or work-product protection. See Fed.R.Evid. 502(b) Advisory Committee Notes (2007).

The Rule states:

Rule 502. Attorney client Privilege and Work Product; Limitations on waiver

(b) Inadvertent disclosure.—When made in a Federal proceeding or to a Federal Office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:

(1) the disclosure is inadvertent;

(2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and

(3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

First, however, it must be determined if the documents in question are privileged. *Peterson v. Bernardi*, 262 F.R.D. 424, 427 (D.N.J. 2009). The burden of proof is on the party asserting the privilege to show that the documents in question are privileged. *See, e.g., See ATLC, Ltd. v. Eastman Kodak Co.*, 2007 WL 1101239, *1 (M.D. Fla. April 12, 2007) (*citing Bogle v. McClure,* 332 F.3d 1347, 1358 (11th Cir. 2003); *CSX Transp., Inc. v. Admiral Ins. Co.,* 1995 WL 855421, *1 (M.D. Fla. July 20, 1995)("the burden is on [the] party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship")(citation omitted); *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258

F.R.D. 684 (S.D. Fla. 2009); *Peterson* at 428 ("Plaintiff's burden of proof is not satisfied by his broad unsupported allegations.") (citation omitted).

In a case decided by the Middle District of Florida, the court stated,

. . . the mere submission of a privilege log asserting certain privileges is not always enough to show such assertions are actually valid.  As was explained in Bowne:
If the court chooses to rely on adequate privilege logs, typically the logs will identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure.  Other required information, such as the relationship between the individuals listed in the log and the litigating parties, the maintenance of confidentiality and the reasons for any disclosures of the document to individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition *testimony*.  Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.
The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed.  The focus is on the specific descriptive portion of the log, and not on the conclusory invocations of the privilege or work-product rule, since the burden of the party withholding documents cannot be "discharged by mere conclusory or *ipse dixit* assertions."

*CSX Transp., Inc.,* 1995 WL 855421 at *3 (*quoting Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993)(emphasis added)).  *See also AARP v. Kramer Lead Marketing Group*, No. 3:03 CV 1033 J 99MCR, 2005 WL 1785199 (M.D. Fla. July 26, 2005) (same) (*citing CSX Transp., Inc.*, 1995 WL 855421).

Here the Defendant has provided no testimony concerning the maintenance of confidentiality of any potentially privileged documents.  Nor has he established the source or circumstances surrounding the creation of GX1 or many of the other documents he asserts as privileged.  Thus he has not established the details necessary to demonstrate fulfillment of the privilege that is claimed.

Turning to Fed.R.Evid. 502(b), the party asserting the privilege has the burden of proving he has satisfied the requirements of Rule 502(b). *See Pilot v. Focused Retail Property I, LLC*, 274 F.R.D. 212, 217 (N.D.Ill.2011).

It must first be determined if the disclosure was inadvertent.  In analyzing this, it is important to be mindful of the principles guiding waiver of the privilege.  As one court has stated:

> The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness. *Tennenbaum v. Deloitte & Touche,* 77 F.3d 337, 340 (9th Cir.1996). "Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." *Id.* at 340–41.

*United States v. Western Titanium Inc.,* 2010 WL 3789775, pg. 3 (S.D.CA 2010).

Here not only is the party asserting the privilege seeking the shelter of the privilege to prevent the use of those items, but is also seeking the dismissal of the indictment and the disqualification of the Government prosecution and investigation team. (DE 1159).  Even more unfairly, the items disclosed are not even substantially unfavorable to the defendant.  Aside from some inflammatory remarks that could be used to show disdain for the government, more significantly the items tend to show an advice of counsel defense which otherwise might not withstand the evidentiary rigors necessary for their introduction.

In any event, the evidence shows that attorney Roth told Agent Cassitta that the Defendant wanted to turn over everything, even though he had not reviewed it all.  This coupled with the fact that the items were largely supportive of a form of an advice of counsel defense leads to this Court's conclusions that the disclosures were not inadvertent.

Next, Fed.R.Evid. 502(b),(2) requires that the holder of the privilege or protection took reasonable steps to prevent disclosure. Here the holder did not disclose to his attorney that the

folder was privileged material.  His attorney did not conduct a privilege review, and did not review all the documents or binders.  Attorney Roth advised Agent Cassita when he turned over the documents that the client wanted him to have everything, notwithstanding that attorney Roth had not reviewed all the files.  Thus, reasonable steps were not taken to prevent disclosure.

Finally, it must be determined if the holder promptly took reasonable steps to rectify the error.

In the case of *In re Grand Jury (Impounded)*, 138 F.3d 978 (3rd Cir. 1998), the court found that because of the passage of time, that is waiting four months to file a motion to compel the return, the privilege had been waived.  The Court of Appeals stated:

> "In short, when a party's adversary has obtained possession of a party's work product and refuses to recognize the work product privilege, the party asserting the privilege must move expeditiously for relief particularly where, as here, the party asserting the privilege does not even claim that he had reason to believe that the adversarial party was not making use of the work product.

138 F.3d at 982.

In the case of *In re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672 (DC Cir. 1979), counsel for the subpoenaed entity had turned over to the Department of Justice Anti-Trust Division documents which were initially viewed as privileged despite the admonition in the subpoena to withhold and identify on a log privileged materials which were being withheld. New counsel for the company entered the case and sought return of the documents after DOJ had access to and reviewed the claimed privileged documents for more than 18 months after disclosure.  The court stated that "it would be unfair and unrealistic now to permit the privilege's assertion as to these documents which have been thoroughly examined and used by the government for several years."  604 F.2d at 675.

Here the Defendant waited for 19 months before filing a motion for return of the documents. In the interim he did not even follow up on getting copies of the documents disclosed to the government. No reasonable steps were taken to promptly rectify the error.

*Sixth Amendment implications*

Defendant also argues that the effect of allowing the government to review and potentially utilize the materials affects his Sixth Amendment right to counsel.

The right to counsel "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). An attorney cannot be deemed ineffective for constitutional representation purposes if the activity occurs at a time when no constitutional right to counsel exists. See *United States v. Moody*, 206 F.3d 609 (6th Cir. 2000); *United States v. Kemna,* 356 F.3d 880 (8th Cir. 2004); and *United States v. Montaner*, 2012 WL 442985, at pages 4-6 (S.D.FL. 2012).

Here, the right to counsel had not attached when the materials were disclosed. In addition, the materials were not substantially prejudicial but rather supported an advice of counsel defense. Moreover, they bolstered the Defendant's position that he was being cooperative with the Government by turning over "everything." Thus it cannot be said that counsel for the Defendant was being ineffective.

For the forgoing reasons this Court RECOMMENDS that the Defendant's motions to exclude evidence (DEs 975, 1003) and to dismiss the Indictment (DE 1159) be DENIED.

**NOTICE OF RIGHT TO OBJECT**

Pursuant to Local Magistrate Rule 4(b), the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Kenneth A. Marra

within *four (4) business days* (until October 25, 2013) after being served with a copy.  The Court is expediting any objections to this Report and Recommendation based upon the imminent trial date and pursuant to S.D. Fla. Local Mag. J. R. 4(a).  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2); *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc*).

**DONE** and **SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 21 day of October, 2013.


JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE


Copies to:
Hon. Kenneth A. Marra
Counsel of record